UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HUMAN RELATIONS COMMISSION,<br><br>    Defendant. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Cheryl Williams, by and through her attorneys, Christi Wallace, Esquire and David Manes Esquire of Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12203 (2009). Plaintiff has a disability under the ADA. Plaintiff asked for reasonable accommodations but the Defendant refused to accommodate the Plaintiff.

2. Plaintiff also alleges discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e. Plaintiff alleges the Defendant treated her differently from other white employees and failed to accommodate her disability because of her Race and Gender.

3.      Plaintiff also alleges discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§621-623.  Plaintiff was not given accommodations for her disability because she was one of the oldest employees with seniority and was paid significantly more than other younger employees.

## II. Jurisdiction and Venue

4.      This action arises under the ADA, 42 U.S.C. §§12101-12203 and Title VII, 42 U.S.C. §2000e.  This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1367(a).

6.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. Parties

7.      Plaintiff, Cheryl A. Williams ("Plaintiff"), is an adult individual residing at 325 Janice Drive, Pittsburgh, PA 15235 of Allegheny County, Commonwealth of Pennsylvania.

8.      Defendant, PHRC ("Defendant"), is a business located at 301 Fifth Avenue, Suite 390, Piatt Place, Pittsburgh, PA 15222 of Allegheny County, Commonwealth of Pennsylvania.

## IV. Facts

9.      Plaintiff was employed with the Defendant as a Human Relations Representative I since September 25, 1999 but received a promotion and her final position was a Human Relations Representative II.

2

10. Plaintiff was forced to quit on January 15, 2014.

11. Plaintiff has been diagnosed with certain medical disabilities including Fibromyalgia, chronic pain and a Musculoskeletal injury sustained while working for the Defendant.

    a. Plaintiff was diagnosed with a Musculoskeletal injury in 1999. However, due to the Defendant's lack of accommodation, Plaintiff developed Fibromyalgia in 2002.

12. Plaintiff's disabilities mean that she is in constant pain throughout the day, making it difficult for her to:

    a. Sit for a long periods of time;

    b. Stand for a long periods of time; and

    c. Walk extensively during the workday.

13. Defendant became aware of Plaintiff's disabilities in 1999.

14. Plaintiff's disabilities are extremely well-documented.

15. Plaintiff has requested certain reasonable accommodations and the requests have been ongoing since 1999.

    a. The first category of accommodations requested by Plaintiff included desk implements that would allow her to perform her job.

        i. Following her doctor's professional advice, Plaintiff communicated to the Defendant that she needed the following tools to perform her job:

            1. Voice-activated software for computer usage;

            2. Telephone headset;

            3. Raised monitor;

    4. Trackball mouse; and

    5. Foot stool.

  ii. Defendant did provide <u>some</u> of these items. The Defendant failed at various times to provide all of these necessary items.

b. The second category of accommodation requested by the Plaintiff included the placement of her workspace near the office printer.

  i. The printer in the office was centrally located requiring employee to stand up and walk the distance from their respective workspaces to the printer every time a document is printed.

  ii. Plaintiff reasonably requested to have her workspace moved closer to the printer to reduce her walking since extensive walking aggravates her medical disabilities and causes her significant pain. Plaintiff asked Karen George ("Ms. George"), Office Manager, to have her workspace moved closer.

  iii. Plaintiff made this request multiple times.

    1. In the past, employees were allowed to move workspaces without a formal, written request but Plaintiff was required to submit the request in writing.

  iv. There was an empty workstation located within 4 feet of the printer, but Plaintiff's supervisor, Regional Manager Adam Stalczynski ("Mr. Stalczynski"), refused to accommodate her in this simple way by allowing her to move to the empty workstation.

        1. This request would have greatly assisted the Plaintiff but she was denied.

        2. Plaintiff believes this was another effort by Mr. Stalczynski to create a hostile work environment by forcing her to retire.

c. The final category of accommodation requested by the Plaintiff was for an adjustable-height desk that would allow the Plaintiff to perform her job while sitting and standing (when she needed to stand because of her disability).

    i. When the PHRC Pittsburgh Regional Office was located in its former office, Plaintiff was given the adjustable-height desk to accommodate her.

    ii. For unexplained and inexplicable reasons, when the regional office moved to Piatt Place, Plaintiff was forced to return to working at a non-adjustable desk. This change in working conditions aggravated Plaintiff's disabilities and caused her further unnecessary and debilitating pain, which resulted in her becoming disabled and forcing her to quit.

    iii. Plaintiff requested numerous times to be able to use the adjustable-height desk that was originally purchased for her use as an accommodation.

    iv. The adjustable-height desk is currently located in the same office where Plaintiff worked. At first it was located in office of the former Regional Director, George Simmons ("Mr. Simmons"). It was later moved to another office in the same area where Robert Flipping ("Mr. Flipping") worked. Neither Mr. Simmons nor Mr. Flipping has a medical need for this specialized desk, but they have refused to provide it to the Plaintiff for whom it was purchased as an accommodation.

       v. When Plaintiff was denied this accommodation, she took it upon herself to try and provide her own accommodation. Plaintiff would use her workstation and the workstation beside her in order to accommodate her disability. Although the Defendant knew the Plaintiff was using both workstations to accommodate herself and there were other available workstations not in use, a new employee was put into the workstation beside the Plaintiff. Plaintiff was no longer able to use both workstations.

16. In 2004, Plaintiff's disability worsened when she fell at work due to the Defendant rearranging her workstation without her knowledge.

    a. Defendant had installed a clear, rubber floor matt underneath Plaintiff's desk.

    b. The Defendant did not notify the Plaintiff of the floor matt and when Plaintiff went to move her chair, the chair fell from under her and she landed on the floor.

    c. Plaintiff sustained a back sprain as a result of the fall.

    d. Plaintiff filled out an Incident Report detailing her accident.

    e. Joe Retort ("Mr. Retort"), Plaintiff's Supervisor, was asked to complete a section of the Incident Report.

    f. As a result of Mr. Retort's comments on the Incident Report, Plaintiff was denied Worker's Compensation and was forced to work in pain with her injury.

    g. Plaintiff's disabilities worsened because she was not able to seek the recommended treatment for her back sprain.

17. The Defendant's lack of accommodations caused Plaintiff's medical disabilities to worsen. Plaintiff was experiencing excruciating and unbearable pain every day when she reported for work.

18. Plaintiff was also subjected to discriminatory treatment and a hostile work environment by former Regional Director, Mr. Simmons, Plaintiff's Supervisor, Mr. Retort, Ellen Surloff ("Ms. Surloff"), former Assistant Chief Counsel for the PHRC, and Mike Hardiman ("Mr. Hardiman"), Acting Chief Counsel for the PHRC.

   a. On February 24, 2009, Ms. Surloff wrote a completely false statement about the Plaintiff regarding her work activity.

      i. Mr. Hardiman and Mr. Floyd called the Plaintiff into the current Regional Director's office, Mr. Simmon, and verbally harassed her by trying to make her admit to the false statement Ms. Surloff wrote.

      ii. When the Plaintiff would not admit to the false statement, they threatened the Plaintiff with a suspension.

      iii. The Defendant carried through with their threat and later suspended the Plaintiff 5 days without pay.

   b. In April of 2010, Plaintiff was transferred to Mr. Retort's department. When Plaintiff was transferred, Mr. Retort reviewed Plaintiff's performance reviews for the past 12 months. As a result of Mr. Retort's review, he put the Plaintiff on probation. Mr. Retort's review of Plaintiff's performance reviews for the past 12 months went against policy and the labor agreement through PSSU 668.

   c. In April 2011, Ms. Surloff physically assaulted the Plaintiff by striking her in the chest.

   d. On May 20, 2011, another incident occurred in which Ms. Surloff harassed the Plaintiff for an incident that occurred outside the office.

      i. Ms. Surloff followed the Plaintiff into her cubicle and became confrontational.

      ii. Ms. Surloff would not leave the Plaintiff alone even after the Plaintiff repeatedly asked Ms. Surloff to leave her cubicle.

  e. In 2011, Mr. Simmons, then acting Regional Director, threatened to harm the Plaintiff.

      i. After Ms. Surloff assaulted Plaintiff, she filed a complaint detailing Ms. Surloff's behavior.

      ii. As Plaintiff was passing Mr. Simmons in the hallway, Mr. Simmons stopped the Plaintiff to discuss the complaint against Ms. Surloff.

      iii. Mr. Simmons told the Plaintiff, "I'm not afraid of you. I'll hit you."

19. Plaintiff was also subjected to discriminatory treatment from the current Regional Manager, Mr. Stalczynski (who replaced Mr. Simmons after he retired), because of her Race, Gender and Age.

  a. In May of 2013, Mr. Stalczynski singled the Plaintiff out for discriminatory treatment occurred when he sent her an email asking her to meet with him so he could prioritize her work.

      i. Plaintiff responded by asking if Mr. Stalczynski planned to meet with other employees to prioritize their work as well, and he admitted she was the only one.

      ii. Plaintiff realized she was being unfairly targeted, and she respectfully requested no to be singled out for such treatment.

      iii. Mr. Stalczynski became visibly upset and hostile towards the Plaintiff.

b. Also in May of 2013, Mr. Stalczynski harassed the Plaintiff by falsely accusing her of violating the agency call-off policy.

c. In June 2013, the Plaintiff learned that she was under investigation by the human resources department, apparently at the request of Mr. Stalczynski or another supervisor involved in harassing and retaliating against her.

d. Around July 26, 2013, Mr. Stalczynski singled the Plaintiff out for discriminatory treatment again.

   i. Plaintiff took time off from work. Plaintiff followed the established process as she always had before, submitting the request for time off through the digital system to be approved by her immediate supervisor. The request was approved, and Plaintiff did take the time off.

   ii. Mr. Stalczynski decided to confront the Plaintiff, accusing her of violating policy in a counseling memo dated August 6, 2013.

   iii. Other non-disabled, younger, Caucasian employees at the office could not help but observe how "ridiculous" Mr. Stalczynski's behavior was, noting that they followed the exact same procedure "all the time" and were never disciplined or counseled for it.

   iv. All the employees also noted that it was strange for the Regional Director to involve himself directly in a process that normally only involves an employee and her direct supervisor.

   v. Mr. Stalczynski targeted the Plaintiff for disparate treatment.

e. In July of 2013, Plaintiff actually overheard Mr. Stalczynski speaking with Mr. Retort, her Supervisor, about harming the Plaintiff as an employee.

    f. In August of 2013, Mr. Stalczynski singled the Plaintiff out for unfair discipline.

        i. One day, Mr. Stalczynski attempted to confront the Plaintiff after an exchange of emails between the two. The Plaintiff had a headset on and her back turned to the entrance to her workspace, so she was unaware that he was there.

        ii. Mr. Stalczynski grew visibly frustrated—as coworkers later commented, his face was visibly flushed and angry—and aggressively confronted her about the leave.

        iii. Plaintiff asked why Mr. Stalczynski was involving himself in a leave approval process that normally only involves the employee and direct supervisor. Mr. Stalczynski shouted, "In my office! Right now!" The Plaintiff was surprised by his loss of composure, but was understandably hesitant to follow an emotionally unstable supervisor to a private office with no one else around. The Plaintiff calmly attempted to deflect by retracting her inquiry, stating, "That's okay, I don't need an answer." Mr. Stalczynski replied, "Okay."

        iv. Although Mr. Stalczynski said "okay," he continued to escalate his unfair persecution of the Plaintiff by writing her up for insubordination.

20. The Defendant knew of the discrimination the Plaintiff was subjected to because:

    a. Plaintiff filed a complaint of discrimination and a hostile work environment in May 2013 citing Mr. Stalczynski; and

    b. Plaintiff had access to emails from Commissioners who commented on discrimination occurring at the PHRC. The Commissioners were aware of the

environment that Plaintiff described in her complaints but did nothing to address the situation. See attached Exhibit A.

21. Plaintiff was subjected to discriminatory treatment and a hostile work environment for a decade and continued to work up until her last weeks of employment. However, Mr. Stalczynski's behavior was more than the Plaintiff could endure.

22. Plaintiff was forced to quit on January 15, 2014 as a result of Defendant's failure to accommodate her disabilities and the hostile work environment she was forced to work in.

## V. Allegations

### Count I
### Discrimination in Violation of the Americans with ADA

23. The preceding paragraphs are incorporated herein as if set forth at length.

24. Plaintiff has a "disability" as defined under the ADA, 42 U.S.C. §12102.

25. Plaintiff has been diagnosed with certain medical disabilities including Fibromyalgia, chronic pain and a Musculoskeletal injury sustained while working for the Defendant.

   a. Plaintiff was diagnosed with a Musculoskeletal injury in 1999. However, due to the Defendant's lack of accommodation, Plaintiff developed Fibromyalgia in 2002.

26. Defendant became aware of Plaintiff's disabilities in 1999. Plaintiff provided numerous documents to Defendant concerning her disability and accommodations.

27. Plaintiff had requested numerous accommodations from a span of 1999 until her quit in 2013. The Plaintiff had requested the following accommodations:

   i. Voice-activated software for computer usage;
   ii. Telephone headset;

   iii. Raised monitor;

   iv. Trackball mouse;

   v. Foot stool;

   vi. Placement of her workspace closer to the office printer; and

   vii. Adjustable-height desk.

28. Defendant has provided no reason for why they failed to provide the Plaintiff's accommodations.

29. Plaintiff's accommodations were reasonable and economically feasible. The Defendant would not suffer any economic hardship.

 a. The cost of a telephone headset, raised monitor, trackball mouse and foot stool are minimal;

 b. The placement of Plaintiff's workspace closer to the office printer would cost no money; and

 c. The adjustable-height desk was currently located in the same office where Plaintiff worked.

   i. First, it was located in the office of Mr. Simmons.

   ii. It was later moved to another office in the same area where Mr. Stalcynski worked.

   iii. It was later moved to another office in the same area where Mr. Flipping worked.

   iv. The desk could have been easily moved or the Plaintiff could have had her workspace set up where the desk was currently situated.

30. The Defendant has violated the ADA in the following ways:

    a. Defendant had failed to provide the Plaintiff with all of her medically documented, doctor recommended accommodations.

    b. The Plaintiff provided extensive documentation to the Defendant stating what accommodations she needed and the Defendant refused to engage in the interactive process of accommodating the Plaintiff.

    c. As a result of Defendant's lack of accommodation, Plaintiff developed Fibromyalgia in 2002.

    d. Plaintiff received assistance from the Office of Vocation and Rehabilitation ("OVR") who offered to assist the Defendant with accommodations but the Defendant refused to work with OVR.

    e. Plaintiff was denied Worker's Compensation for an injury that occurred in 2004, which resulted in further worsening of her disabilities.

    f. Defendant forced the Plaintiff to continue working in excruciating pain without her appropriate accommodations, therefore further worsening her disability.

    g. Defendant forced the Plaintiff to quit due to lack of accommodations.

### Count II
### Violation of Title VII

31. The preceding paragraphs are incorporated herein as if set forth at length.

32. The Plaintiff is a member of a protected class under Title VII.

33. Plaintiff is an African-American Woman.

34. Plaintiff was subjected to discriminatory treatment and a hostile work environment in violation of Title VII.

35. The Defendant discriminated against the Plaintiff in violation of Title VII in the following ways:

a. On February 24, 2009, Ms. Surloff wrote a completely false statement about the Plaintiff regarding her work activity. When the Plaintiff would not admit to the false statement, she was threatened with a suspension (which was later carried out).

b. In April of 2010, Plaintiff was transferred to Mr. Retort's department. When Plaintiff was transferred, Mr. Retort reviewed Plaintiff's performance reviews for the past 12 months. As a result of Mr. Retort's review, he put the Plaintiff on probation. Mr. Retort's review of Plaintiff's performance reviews for the past 12 months went against policy and the labor agreement through PSSU 668.

c. In April 2011, Ms. Surloff physically assaulted the Plaintiff by striking her in the chest.

d. On May 20, 2011, another incident occurred in which Ms. Surloff harassed the Plaintiff for an incident that occurred outside the office.

e. In 2011, Mr. Simmons, then acting Regional Director, threatened to harm the Plaintiff. Mr. Simmons told the Plaintiff, "I'm not afraid of you. I'll hit you."

f. In May of 2013, Mr. Stalczynski singled the Plaintiff out for discriminatory treatment occurred when he sent her an email asking her to meet with him so he could prioritize her work.

   i. Plaintiff responded by asking if Mr. Stalczynski planned to meet with other employees to prioritize their work as well, and he admitted she was the _only one_.

g. In May of 2013, Mr. Stalczynski harassed the Plaintiff by falsely accusing her of violating agency call-off procedure.

h.  In June 2013, the Plaintiff learned that she was under investigation by the human resources department, apparently at the request of Mr. Stalczynski.

i.  Around July 26, 2013, Plaintiff took time off from work. Plaintiff followed the established process as she always had before.

   i.  Mr. Stalczynski decided to confront the Plaintiff, accusing her of violating policy in a counseling memo dated August 6, 2013.

   ii.  Other employees at the office could not help but observe how "ridiculous" Mr. Stalczynski's behavior was, noting that they followed the exact same procedure "all the time" and were never disciplined for it.

j.  In July of 2013, Plaintiff actually overheard Mr. Stalcynski speaking with Joe Retort ("Mr. Retort"), her immediate Supervisor, about harming the Plaintiff as an employee.

k.  In August of 2013, Mr. Stalczynski singled the Plaintiff out for unfair discipline.

   i.  Mr. Stalczynski attempted to confront the Plaintiff.

   ii.  Mr. Stalczynski grew visibly frustrated with the Plaintiff.

   iii.  Plaintiff asked Mr. Stalczynski a question.

   iv.  Mr. Stalczynski then shouted, "In my office! Right now!"

   v.  Later, Mr. Stalczynski unfairly persecuted the Plaintiff by writing her up for insubordination.

l.  The Defendant knew of the Plaintiff's allegations since May 2013 and did nothing about it.

m.  The Defendant knew of the discriminatory behavior occurring at the PHRC and did not address it.

n. After Plaintiff was terminated, the Defendant has chosen to hire younger employees.

## Count III
### Discrimination in Violation of the ADEA

36. The preceding paragraphs are incorporated herein as if set forth at length.

37. The Plaintiff is a member of a protected class under the ADEA.

38. Plaintiff was born on May 25, 1958 and was 55 when she quit.

39. Plaintiff was discriminated against because she was one an "older" employee who had seniority and higher wages.

40. Following Plaintiff's quit; a younger employee replaced her.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

a. Loss of income of back wages in excess of $59,400;

b. Loss of wages for five years in excess of $265,000;

c. Additional punitive damages in excess of $75,000;

d. Unemployment Compensation benefits in excess of $26,000;

e. Plaintiffs' legal fees in excess of $25,000;

f. Pre-judgment and continuing interest;

g. Court costs; and

h. Other such relief as the Court may deem just and proper.

Respectfully submitted,

*Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower
600 Grant Street, Suite 660
Pittsburgh, PA 15219